**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

**CALVIN JEROME STOVER**                                                    **PETITIONER**

**VS.**                      **CASE NO. 5:17CV00104 JLH/PSH**

**WENDY KELLEY, Director of the
Arkansas Department of Correction**                           **RESPONDENT**

## PROPOSED FINDINGS AND RECOMMENDATION

### INSTRUCTIONS

The following recommended disposition has been sent to United States District Court Judge J. Leon Holmes.  You may file written objections to all or part of this Recommendation.  If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court Clerk within fourteen (14) days of this Recommendation.  By not objecting, you may waive the right to appeal questions of fact.

### DISPOSITION

Calvin Jerome Stover ("Stover") seeks habeas corpus relief.  Stover originally filed a petition for relief *pro se*.  Docket entry no. 2.  Subsequently, attorney Craig Lambert entered an appearance in the case and submitted an amended petition for writ of habeas corpus.  Docket entry nos. 11& 19.  Respondent Wendy Kelley ("Kelley") has filed a response to the amended petition.  Docket entry no. 21.

Stover challenges his 2013 convictions from Benton County Circuit Court on the charges of possession of a controlled substance, possession of a firearm by certain persons, and simultaneous

possession of drugs and firearms. Stover was sentenced to a term of 40 years' imprisonment.[1] On direct appeal to the Arkansas Court of Appeals, Stover argued: (1) the evidence was insufficient to prove he possessed a usable amount of the controlled substance, methamphetamine; (2) the trial court erred in failing to grant a mistrial because jurors may have seen him wearing a jail identification bracelet prior to trial; and (3) the trial court erred by allowing the prosecution to introduce evidence in the trial sentencing phase showing that Stover had later been arrested, but not convicted, on other charges. The convictions were affirmed. *Stover v. State*, 2014 Ark. App. 393. The appellate Court specifically found the sufficiency of the evidence claim was not preserved for review because Stover argued at trial that he lacked intent to possess methamphetamine, a different argument than the claim on appeal that the prosecution failed to prove possession of a usable amount of methamphetamine. Thus, the Court of Appeals declined to address the sufficiency of the evidence argument. The Court of Appeals also declined to address Stover's argument that a mistrial should have been granted because jurors may have seen his jail identification bracelet. The appellate Court held the issue was not preserved because Stover never obtained a ruling on his motion for mistrial. Finally, the Court of Appeals found the trial court did not err in admitting the testimony of a subsequent similar crime during the trial's sentencing phase.

Stover sought Rule 37 relief in September 2014, raising eight grounds: (1) the trial judge had a conflict of interest and should have recused because Stover had filed a grievance against the judge with the Judicial Discipline and Disability Commission; (2) both of the trial attorneys[2] representing Stover had conflicts of interest because Stover filed a complaint against one of the attorneys with the Public Defender Commission; (3) he received ineffective assistance of counsel when his attorneys failed to move for a directed verdict on the basis that the prosecution failed to prove he

---

[1]Stover was sentenced to 6 years for possession of a controlled substance, 6 years for possession of a firearm by certain persons, and 40 years for simultaneous possession of drugs and firearms, a Y felony. The terms are to run concurrently. Stover was acquitted of possession of drug paraphernalia.

[2]Stover was represented by two attorneys from the Benton County Public Defender's Office, Sarah Ashley and Scott McElveen.

possessed a usable amount of methamphetamine; (4) he received ineffective assistance of counsel when his attorneys failed to object to the prosecution's amendment of the criminal charges to include a count of simultaneous possession of drugs and firearms; (5) he received ineffective assistance of counsel when his attorneys failed to challenge the underlying probable cause for an arrest warrant issued by Washington County; (6) he received ineffective assistance of counsel when his attorneys failed to obtain a ruling on the motion for mistrial after it was noted that Stover was wearing his jail identification bracelet while in the presence of the jury panel; and (7) he received ineffective assistance of counsel when his attorneys failed to investigate and interview witnesses. He requested a hearing, which was denied by the trial court.

The trial court, in a January 2015 Order, denied the Rule 37 petition. Stover's appeal to the Supreme Court of Arkansas was unsuccessful. *Stover v. State*, 2016 Ark. 167. In this opinion the Court accurately identified *Strickland v. Washington*, 466 U.S. 668 (1984) as setting the standard for analyzing allegations of ineffective assistance of counsel. Thus, throughout this opinion the parties are in agreement that *Strickland* is the "clearly established Federal law, as determined by the Supreme Court" as that phrase is used in 28 U.S.C. § 2254(d)(1), (2).

Stover's amended petition for writ of habeas corpus advances the following claims for relief:

1. He is actually innocent of the crime of possession of a controlled substance and the crime of simultaneous possession of drugs and firearms;

2. He received constitutionally ineffective assistance of counsel in the following ways:

   a. Failure to properly challenge the sufficiency of the evidence at trial by claiming the prosecution failed to prove he possessed a usable amount of methamphetamine;

   b. Failure to challenge his forty year sentence as excessive under the Eighth Amendment;

   c. Trial counsel labored under a conflict of interest;

3

d.      Failure to object to inadmissable and prejudicial testimony from Benton County Deputy Sheriff Charles Wells ("Wells");

e.      Failure to interview and call witnesses at trial;

f.      Failure to object to the prosecution's amendment of the information, and prosecutorial vindictiveness in amending the information; and

g.      Failure to properly object, move for a mistrial, and preserve the objection when Stover was seen by the jury wearing a jail identification bracelet.

**Procedural Default**

Stover, in his amended petition, anticipated that Kelley would contend that some of his claims were procedurally barred for failure to adequately raise the claims in state court.  As a result, he offers arguments why the procedural bar should be excused and the claims all considered on their merits.  Stover cites *Martinez v. Ryan*, 566 U.S. 1 (2012) and subsequent cases to overcome the procedural lapse in state court. Stover was correct in anticipating Kelley's response, as she cites claims 2(b), (d), and (f) as procedurally barred, and discusses the import and application of *Martinez*. We are guided by the following language of the Eighth Circuit Court of Appeals:

> In cases such as this, it might well be easier and more efficient to reach the merits than to go through the studied process required by the procedural default doctrine.  Recent commentary points up the problems with the cause and prejudice standard:
>
> > [T]he decision tree for habeas review of defaulted claims is intricate and costly. . . .  In essence, *Sykes* and *Strickland* require habeas lawyers and federal judges and magistrates to work through the equivalent of a law school exam every time a defendant tries to escape procedural default.

*McKinnon v. Lockhart*, 921 F.2d 830, 833 n.7 (8th Cir. 1990) (quoting Jeffries & Stuntz, *Ineffective Assistance and Procedural Default in Federal Habeas Corpus*, 57 U.Chi.L.Rev. 679, 690 (1990)). *See also Williams v. Norris*, 612 F.3d 941, 953 (8th Cir. 2010).  In this instance, we find it wiser and a better use of judicial resources to forego the procedural default analysis and address the merits of Stover's claim for relief.

***One: Stover is actually innocent of possession of a controlled substance and the crime of simultaneous possession of drugs and firearms:***

Stover maintains he is actually innocent because the prosecution failed to prove he possessed a usable amount of methamphetamine. Stover relies upon *Harbison v. State*, 302 Ark. 315 (1990), where the Supreme Court of Arkansas held that possession of less than a usable amount of cocaine did not constitute criminal possession of the drug. Stover points to the testimony of Julie Hathcock ("Hathcock"), a forensic chemist working for the Arkansas State Crime Laboratory, that the baggie found on Stover when arrested contained .1736 grams of a white substance. Docket entry no. 12-2, page 226. Hathcock tested the substance, finding it to be methamphetamine and dimethyl sulfone. She described dimethyl sulfone as "just a cutting agent" or "filler" which dilutes the methamphetamine. Docket entry no. 1202, page 227. Stover's counsel inquired: "Were you able, through testing, to determine how much methamphetamine and how much dimethyl sulfone were contained is this sample [the .1736 grams]?" Hathcock replied, "No, sir." *Id.* Stover concludes that Hathcock's testimony was therefore insufficient to prove Stover possessed a usable amount of methamphetamine. Stover reasons that it was "entirely possible that the substance seized from Stover contained only a trace amount of methamphetamine and was ninety-nine percent dimethyl sulfone." Docket entry no. 19-1, page 6.

The question of whether a usable amount of methamphetamine was proved by the prosecution was not addressed in Stover's direct appeal because the Arkansas Court of Appeals found the issue was not preserved for appeal. However, the issue was addressed by the state courts when Stover claimed, in his Rule 37 petition, that his trial attorneys were ineffective for failing to preserve the claim for direct appeal. The trial court and the Supreme Court of Arkansas found no prejudice accrued to Stover due to his trial attorneys' failure to preserve this issue. The Supreme Court of Arkansas held:

> In his third point on appeal, Stover contends that counsel were ineffective when they failed to move for a directed verdict on the basis that there was insufficient proof that he possessed a usable amount of a controlled substance. This specific challenge to

5

the sufficiency of the evidence was raised on direct appeal and was found to have been waived. *Stover,* 2014 Ark. App. 393, at 1, 437 S.W.3d at 697.

Stover alleges that he was prejudiced by the failure to preserve the issue because the evidence was insufficient to show he possessed a usable amount of methamphetamine because expert testimony established that the sample found in his possession contained 0.1736 grams of both methamphetamine and dimethyl sulfone, but that the specific amounts of each substance contained in the sample could not be ascertained. However, the amount of a diluent, such as dimethyl sulfone, discovered in a controlled substance does not negate the criminality of its possession. *See* Ark.Code Ann. § 5–64–419(a)(b)(1)(A) (Supp. 2011) (stating in pertinent part that it is unlawful to possess methamphetamine with an aggregate weight including an adulterant or diluent in an amount that is less than two grams); *see also Jones v. State,* 357 Ark. 545, 553, 182 S.W.3d 485, 489 (2004) (holding that a measureable amount of methamphetamine includes the amount of the pure drug plus all adulterants). Furthermore, we have concluded that possession of 100 milligrams constituted a usable amount of methamphetamine. *Jones,* 357 Ark. at 553, 182 S.W.3d at 489. Here, the expert's testimony established that Stover possessed more than 100 milligrams of methamphetamine. Stover fails to demonstrate that had counsel preserved this issue for appellate review, the appellate court would have found that the evidence was insufficient to support the conviction. *See Strain v. State,* 2012 Ark. 42, at 3–4, 394 S.W.3d 294, 298 (per curiam).

*Stover v. State*, 2016 Ark. 167, 5–6.

When the state court has ruled on the merits of a petitioner's claims, a writ of habeas corpus may not be granted unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court." 28 U.S.C. § 2254(d)(1), (2). Here, Stover does not plead or prove that the Arkansas court ruling that he possessed a usable amount of methamphetamine was contrary to, or involved an unreasonable application of, clearly established federal law. Although the state Supreme Court did not specifically cite federal law, that failure is not problematic as neither the court's reasoning nor result contradicts federal law. *See Cox v. Burger*, 398 F.3d 1025, 1030 (8th Cir. 2005). The applicable federal law requires the court to ask if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) [emphasis in original]. The Supreme Court of Arkansas' ruling that Stover possessed a usable

amount of methamphetamine[3] is consistent with, and a reasonable application of the *Jackson v. Virginia* standard.

Stover has also not shown that the adjudication of the claim by the Supreme Court of Arkansas resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented. The record shows Stover possessed .1736 grams of a white substance, which forensic chemist Hathcock testified was methamphetamine and dilutant dimethyl sulfone. The relevant Arkansas statute, cited by the Supreme Court of Arkansas, provides it is unlawful to possess methamphetamine with a weight, "*including an adulterant or diluent,*" of less than 2 grams. Ark. Code Ann. § 5-64-419(a)(b)(1)(A) (emphasis added). Thus, the statute, by definition, includes the weight of the diluent[4] with the weight of the controlled substance, in this instance methamphetamine. The statutory definition on how to calculate the amount, coupled with Arkansas case law holding 100 milligrams of methamphetamine to be a usable amount for purposes of possession, demonstrates that Stover possessed a usable amount of the controlled substance. (100 milligrams equals .1 gram; Stover possessed .1736 grams). *See Jones v. State*, 357 Ark. 545 (2004).

Stover cites *Harbison v. State*, 302 Ark. 315 (1990), to no avail. *Harbison*, decided fourteen years before *Jones*, was convicted of possession of cocaine based upon his possession of a bottle which contained cocaine dust or residue. The amount of cocaine was described as too small to

---

[3]Stover cites testimony from Wells, of the Benton County Sheriff's Office, as inadequate to prove that Stover possessed a usable amount of methamphetamine. Wells stated that the amount of methamphetamine taken from Stover was enough to cause a person ingesting it to become intoxicated. Docket entry no. 12-2, page 163. Wells' testimony, however, was not the basis upon which the Supreme Court of Arkansas ruled that Stover possessed a usable amount of methamphetamine. Instead, that ruling was based entirely upon the precise amount of methamphetamine seized, the statutory directive to use the aggregate weight of the methamphetamine and the dilutant, and the relevant Arkansas cases on usable amounts. As a result, Wells' testimony on intoxicating amounts of methamphetamine was not relevant to the state courts' ultimate decision.

[4]The statute uses the word diluent, a synonym for dilutant, which is the word used by Hathcock in her testimony.

weigh with state crime laboratory equipment, which could weigh nothing smaller than one milligram.  In other words, the amount of cocaine was one hundred times smaller than the amount recognized in *Jones* to be a usable amount.  Because Stover possessed well over 100 milligrams of methamphetamine, the *Harbison* decision does not operate in his favor.  Having carefully reviewed the trial record, we find the evidence meets and exceeds the requirements of *Jackson v. Virginia*.  There is no merit in Stover's challenge to the sufficiency of the evidence.

Stover's challenge to his possession convictions is also framed as a freestanding claim of actual innocence.  Citing *Herrera v. Collins*, 506 U.S. 390 (1993), Stover argues that he demonstrates actual innocence on its own, not as a gateway to establishing other constitutional errors.  Even if we assume a freestanding claim of actual innocence is a cognizable claim for habeas relief, Stover concedes that his burden is extraordinarily high, and that he must establish "facts which unquestionably establish his innocence."  *See Whitfield v. Bowersox*, 324 F.3d 1009 (8th Cir. 2003).  The flaw in Stover's argument is that he does not submit new evidence to demonstrate actual innocence.  Rather, he points to the evidence adduced at trial and argues factual innocence based on his interpretation of that evidence.  *See, e.g., Bousley v. U.S.*, 523 U.S. 614 (actual innocence means factual innocence, not mere legal insufficiency).  It is clear that the proof needed to demonstrate a freestanding claim of actual innocence is greater than that required to show the evidence was insufficient to support his convictions.  As noted above, Stover falls short of showing insufficient evidence existed to support his convictions for possession of methamphetamine and simultaneous possession of drugs and firearms.  It follows that he also falls short of clearing the higher hurdle of proving a freestanding claim of actual innocence.

In summary, there is no merit to Stover's claim of actual innocence, regardless of whether the claim is viewed as an attack upon the sufficiency of the evidence adduced at trial or whether the claim is a freestanding challenge to his convictions for possession of methamphetamine.

***Two(a): Stover received constitutionally ineffective assistance of counsel when his attorneys failed to properly challenge the sufficiency of the evidence at trial by claiming the prosecution failed to prove he possessed a usable amount of methamphetamine:***

This argument is intertwined with the first claim raised by Stover.  In order to prove ineffective assistance of counsel, Stover must prove that (l) his attorneys' actions were unreasonable when viewed in the totality of the circumstances; and (2) he was prejudiced because there is a reasonable probability that, but for counsels' unprofessional errors, the result of the trial would have been different.  *Strickland v. Washington*, 466 U.S. 688 (l983); *Ryder v. Morris*, 752 F.2d 327, 33l (8th Cir. l985).  Stover bears a heavy burden in overcoming "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689; *Kellogg v. Scurr*, 74l F.2d l099, ll0l (8th Cir. l984); *Bell v. Lockhart*, 74l F.2d ll05, ll06 (8th Cir. l984).  This presumption is created to "eliminate the distorting effects of hindsight," and recognizes that "it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland*, 466 U.S. at 689; *Ryder*, 752 F.2d at 33l.

As previously noted, the Supreme Court of Arkansas held that even if Stover's trial attorneys had properly preserved the issue of a usable amount of methamphetamine, he failed to show the evidence was insufficient to support his convictions for possession of the drug.  Phrased in *Strickland* terminology, even assuming the first prong was satisfied, Stover failed to satisfy the test because he did not show the trial's result would have been different but for his attorneys' failures.  The Arkansas Supreme Court's finding is entitled to deference under 28 U.S.C. § 2254(d)(1), (2), and is not based upon an unreasonable application of *Jackson v. Virginia*, 443 U.S. 307 (1979), as urged by Stover.  Stover did not receive ineffective assistance in this regard because his claim of insufficient evidence was without merit for the valid reasons set forth by the state courts.

**Two(b):  Stover received constitutionally ineffective assistance of counsel when his attorneys failed to challenge his forty year sentence as excessive under the Eighth Amendment:**

Stover recognizes that he must satisfy both prongs of the *Strickland* test to show ineffective assistance of counsel, and contends he has done so, asserting his attorneys had a professional duty to object to the excessive sentence and "there is a reasonable probability" that the sentence would have been reduced by the trial court.  Docket entry no. 19-1, page 12.  He concedes that his forty year sentence was within the statutory range allowed by Arkansas law.  (Stover's conviction for simultaneous possession of drugs and firearms was a Y felony, punishable by imprisonment from 10 to 40 years, or for life.)  Nevertheless, he argues that the tiny amount of methamphetamine involved in this case and the forty year sentence violate the Eighth Amendment's prohibition against cruel and unusual punishment.

In order to demonstrate he received a cruel and unusual sentence within the meaning of the Eighth Amendment, Stover bears the burden of showing the sentence was "grossly disproportionate" to the crimes he committed.  *Solem v. Helm*, 463 U.S. 277, 284 (1983).  The *Solem* Court noted that substantial deference is given to a legislature's broad authority to determine the types and limits of punishments and to trial courts who sentence offenders.  In assessing the sentence, the Supreme Court directs us to consider the following, non-exhaustive list of factors: one, the gravity of the offense and the harshness of the penalty; two, sentences imposed on other criminals in the same jurisdiction;[5] and three, sentences imposed for the commission of the same crime in other

---

[5]Stover does not cite Arkansas cases to demonstrate his sentence was an outlier.  Sentences of a similar duration to Stover's for simultaneous possession of drugs and firearms are not exceptions in Arkansas.  *See, e.g., White v. State*, 2015 Ark. 100 (habitual offender sentenced to an aggregate of 1320 months' for possession of cocaine, including 720 months' for simultaneous possession of drugs and firearms); *Handy v. State*, 2004 WL 2251824 (defendant received a total of 504 months' for possession of a controlled substance and simultaneous possession of drugs and firearms); *Moore v. State*, 1998 WL 103315 (defendant entered guilty plea to simultaneous possession of drugs and firearms and received a 48 year sentence); and *Pyle v. State*, 340 Ark. 53 (2000) (50 year term received for two counts of possession of methamphetamine and one count of simultaneous possession of drugs and firearms).  Stover had one felony conviction, fourteen misdemeanor convictions, and there was testimony of an additional arrest for drugs and firearms which occurred a few months after his arrest in this case.

jurisdictions.  *Id.* at 291-292.

Stover, who bears the burden of proving a constitutional violation, points to *Solem, supra,* and *Harmelin v. Michigan*, 501 U.S. 957 (1991), to support his claim.  Neither of these cases shed significant light on the sentence imposed on Stover. In *Solem*, Helm was convicted in South Dakota of a bad check charge in the amount of $100.00, a crime which ordinarily would carry a maximum punishment of five years' imprisonment and a $5,000.00 fine, and was sentenced to life imprisonment without the possibility of parole because of his six prior felony convictions.  The United States Supreme Court found the sentence disproportionate to the crime, specifically finding Helm received the penultimate sentence for relatively minor criminal conduct, that he was treated more harshly than other South Dakota defendants who committed more serious offenses, and that he was treated more harshly than he would have been in any other jurisdiction, with the possible exception of one other location.  In contrast to *Solem*, Stover does not provide an analysis of how his sentence compares with other Arkansas defendants, nor does he offer a comparison with other jurisdictions.  Importantly, the criminal conduct of Stover, simultaneous possession of drugs and firearms, is not minor criminal conduct.  There is no suggestion that the Arkansas legislature acted without authority when it deemed this behavior worthy of a Y felony designation.

In *Harmelin*, the defendant, with no prior felony convictions, was convicted of possessing more than 650 grams of cocaine and received a term of life imprisonment without the possibility of parole.  The Supreme Court affirmed the conviction and held the sentence did not offend the provisions of the Eighth Amendment.

*Solem* and *Harmelin* do not support a claim that Stover's sentence violated the Eighth Amendment.  The Eighth Amendment allegation was not raised in state court.  Had it been raised, it is not reasonably probable that relief would have been granted.  To the contrary, Stover fails to show the claim has merit, and the state courts would not have granted relief based upon the argument that the sentence was grossly disproportionate.  Even in the absence of a state court

decision entitled to deference, we find that Stover's claim of ineffective assistance of counsel for failing to raise the Eighth Amendment argument is without merit.

*Two(c):  Stover received constitutionally ineffective assistance of counsel because trial counsel labored under a conflict of interest.*

Stover raised this claim in his Rule 37 petition.  The trial court denied relief, and the Supreme Court of Arkansas addressed the issue on appeal:

> Stover argues in his second point on appeal that both counsel had a conflict of interest that allegedly arose when Stover filed complaints with the Public Defender Commission against one of his attorneys, Sarah Ashley, which Stover contends created an irreconcilable conflict that impaired the loyalty and the effective representation of both attorneys. Stover's bare contention that counsel were conflicted is insufficient to establish the existence of an actual conflict of interest, which generally requires a showing that counsel was actively representing the conflicting interests of third parties. *Townsend v. State,* 350 Ark. 129, 134, 85 S.W.3d 526, 528 (2002).

> In the absence of an actual conflict, a petitioner alleging that counsel's performance was deficient due to another form of conflict must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Townsend,* 350 Ark. at 134, 85 S.W.3d at 528 (citing *Mickens v. Taylor,* 535 U.S. 162, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002)); *Winfield v. Roper,* 460 F.3d 1026, 1039 (8th Cir.2006) (explaining that the rule presuming prejudice has not been extended beyond cases in which an attorney has represented more than one defendant). Therefore, as with any ineffective-assistance-of-counsel claim, Stover had the burden of providing factual support to demonstrate that the alleged conflict of interest adversely affected counsel's performance. *Bullock v. State,* 353 Ark. 577, 582–83, 111 S.W.3d 380, 384 (2003).

> In his Rule 37.1 petition, Stover failed to identify the specific acts or omissions of counsel that resulted from the alleged conflict. The trial court properly found that Stover had not set forth sufficient facts showing that counsel were disloyal and relied on the record when it concluded that counsel took advantage of every opportunity to aid Stover.  Although Stover on appeal adds additional factual allegations in support of his conflict claim and seems to raise a new claim that the trial court erred when it refused to appoint other counsel, we are precluded from addressing these new fact allegations and claims that are raised for the first time on appeal. *Thornton v. State,* 2014 Ark. 113, at 2, 2014 WL 1096263 (per curiam).

*Stover v. State*, 2016 Ark. 167, 4–5.

Since the state court ruled on the merits of this claim, a writ of habeas corpus may not be granted unless the state court's decision "was contrary to, or involved an unreasonable application

of, clearly established Federal law, as determined by the Supreme Court," or the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court."  28 U.S.C. § 2254(d)(1), (2).

Stover cites *Cuyler v. Sullivan*, 446 U.S. 335 (1980), for the proposition that a new trial is warranted if Stover shows an actual conflict existed and it adversely affected the performance of his trial attorneys.  The state court, however, explicitly found there was no "actual conflict."  Our review of the trial transcript shows the trial court was well aware of disagreements between Stover and his attorneys.  For example, at a February 28, 2013 hearing, in advance of the April trial, Stover disagreed with his attorneys' motion for a forensic evaluation, informed the trial judge that he did not want Sarah Ashley[6] ("Ashley") representing him, that she had mishandled an earlier suppression hearing, and that he had "repeatedly" written to the Public Defender Commission about Ashley.  Docket entry no. 12-1, pages 156-166.  Also, Stover voiced his disagreement with his attorneys on the morning of the trial, stating that he wanted Rene Cook, Gary Madrid, and Kenitta Rambo to testify, but McElveen believed these witnesses "wouldn't benefit me."  Docket entry no. 12-2, page 6.  Stover also complained that he did not understand the amended information, which added the charge of simultaneous possession of drugs and firearms.  As a result, Stover told the trial judge he would like to withdraw his plea.  The trial judge allowed Stover to air his complaint, reminded Stover that he was not entering pleas of guilty which could be withdrawn, and asked McElveen about potential witnesses.  McElveen explained that he had discussed potential witnesses with Stover.  McElveen opined it was his "professional judgment that as a matter of trial strategy each of these witnesses, were they to testify, would be more harmful to his case . . . than they would be helpful."  Docket entry no. 12-2, page 8.  McElveen further explained that Stover would testify that he came into possession of the firearm by disarming Kenitta Rambo's five year old child.  Ms.

---

[6]Ashley and Scott McElveen ("McElveen") of the Benton County Public Defender's Officer represented Stover at trial.  McElveen appeared solo at the February 28, 2013, hearing when Stover aired his complaints about Ashley.

Rambo, if called at trial, would testify that Stover stole the gun from her, according to McElveen.

After the discussion about potential witnesses, Stover complained that McElveen "has not tried to help me" and asked the trial judge for permission to represent himself. Docket entry no. 12-2, page 18. The trial judge denied the request, noting that he had allowed Stover to put his complaint in the record. The parties then entered the courtroom to begin jury selection. The trial judge then held a bench conference and allowed Stover to revisit the issue of self-representation. Stover told the trial judge, "I don't know what to do; I don't know what to expect. I've never been in trouble before." Docket entry no. 12-2, page 26. He asked the trial judge to appoint outside counsel – "someone that I can relate with, someone that I can deal with, someone who's looking out for my interest." Docket entry no. 12-2, page 27. Stover also inquired if he were to continue with Ashley and McElveen if he might be permitted to "pull them to the side" during the trial to provide questions or comments. Docket entry no. 12-2, page 29. The trial judge then stated:

> Here's a possible solution. If Mr. McElveen, Ms. Ashley continue to represent Mr. Stover, if he is asking – telling you he wants certain questions asked and you disagree, for matters of trial strategy, that we approach the bench and put this on the record and then if that's his decision, that you proceed as he desires. Is that a possible solution?

Docket entry no. 12-2, page 30. The proposed solution was deemed acceptable and the trial proceeded. Stover actually utilized the solution when Benton County Deputy Sheriff Charles Wells was testifying. Stover asked the trial judge to pose additional questions, and the questions, at least in part, were asked. Docket entry no. 12-2, pages 178-186.

The foregoing examples demonstrate there were disagreements between Stover, Ashley, and McElveen. However, the test is not whether there was strife and tension but whether there was an actual conflict, as set forth in *Cuyler v. Sullivan, supra.* The Supreme Court of Arkansas' finding that there was no actual conflict stands, as Stover does not demonstrate this to be contrary to or an unreasonable application of federal law, nor does he establish this was an unreasonable

determination of the facts in light of the evidence presented in state court.  There is no merit to this assertion of ineffective assistance of counsel.

**Two(d):  Stover received constitutionally ineffective assistance of counsel when his attorneys failed to object to inadmissable and prejudicial testimony from Wells.**

Wells, the first witness called by the prosecution, told of arresting Stover on May 1, 2012, at the Eighth Street Motel in Rogers, Arkansas.  He stated Stover, who was alone, had a loaded handgun in the waistband of his shorts, and that Stover retrieved a cigarette pack from his pocket. According to Wells, the inside of the cigarette pack contained a bag of methamphetamine and a pipe. The following exchange between Wells and the prosecutor occurred:

Prosecutor: . . .  What – what did you think it was in – inside the Ziploc bag?

Wells: I believed it to be methamphetamine from my past experience and knowledge.

Prosecutor: It doesn't look like a huge amount of methamphetamine.  Can you – are you familiar with methamphetamine in your role as a law enforcement officer?

Wells: Yes, I am.

Prosecutor: And can you explain to the jury if it is or is not enough for a person to ingest to – to become intoxicated on methamphetamine?

Wells: That is correct.

Prosecutor: And what do you base that on when you day that?

Wells: At the initial – at the initial point of arrest – of course, you have to understand that the crime lab, when they get this they have to take a small portion of it also to do their test so – and they can testify to that – but there is enough here – once placed into the smoking device, it doesn't take much to get a high –

Prosecutor: So you're saying –

Wells: – from that methamphetamine.

15

. . .

Prosecutor: So I guess what I'm – I'm trying to get at is it's not a huge amount, but it's not the crumbs of a sandwich.  It's – it's – it's enough to get intoxicated?

Wells: Correct.

Docket entry no. 12-2, pages 163-164.

No objection was made to Wells' testimony at trial, and the issue was not raised on direct appeal or in Stover's Rule 37 proceeding.   Despite this lapse, we are bypassing the issue of procedural default and considering the merits of this claim.  Stover must satisfy the requirements of *Strickland v. Washington*, 466 U.S. 688 (1983).  That is, he must prove that his attorneys' actions were unreasonable when viewed in the totality of the circumstances and he was prejudiced because there is a reasonable probability that, but for counsels' unprofessional errors, the result of the trial would have been different.

Stover contends the failure to object to Wells' testimony was unreasonable because the testimony was speculative and inadmissible.  Stover correctly notes that Wells offered no qualifications of expertise in pharmacology or another field which provided the basis for him to testify as he did.  For the purpose of this Proposed Finding and Recommendations, we assume Stover is correct in this regard, and his attorneys acted unreasonably in failing to object to Wells' testimony.  Having satisfied the first prong of the *Strickland* test, the inquiry moves to whether it is reasonably probable that the result of the trial would have been different but for the failure to object.  We conclude the trial's result would not have been different.

Wells' testimony was not essential to proving that the amount of methamphetamine possessed by Stover was usable.  When the Supreme Court of Arkansas addressed the issue of a usable amount of the drug, there is no mention of Wells and his testimony.  Instead, the Court notes the expert testimony of Hathcock, which established that Stover possessed .1736 grams of methamphetamine.  This testimony, combined with the statutory definition and the Arkansas case

law on a usable amount, proved that Stover possessed a usable amount of methamphetamine. *Stover v. State*, 2016 Ark. 167.  Since the possession of a usable amount rested on evidence other than Wells' opinion testimony, no prejudice resulted from any failure to object to the exchange.  We specifically find the result of the trial would have been the same if Wells had not testified that Stover had enough of the drug to become intoxicated.  Stover fails to satisfy the requisite second prong of the *Strickland* test.  Accordingly, there is no merit to this claim of ineffective assistance of counsel.

> ***Two(e):  Stover received constitutionally ineffective assistance of counsel when his attorneys failed to interview and call witnesses at trial.***

The Supreme Court of Arkansas considered Stover's claim that his attorneys were ineffective for failing to investigate and interview witnesses:

> . . . Stover alleges that counsel were ineffective for failing to investigate and interview witnesses. In his argument on appeal, Stover names Kaneida Rambo, Sheryl Crown, Gary Madrid, Renee Cook, and Candace Williams as witnesses whom counsel failed to call in his defense. This court has held that it is incumbent on the petitioner to name the witness, provide a summary of the testimony, and establish that the testimony would have been admissible into evidence. *Weatherford v. State,* 363 Ark. 579, 586, 215 S.W.3d 642, 649 (2005).

> Although Stover did not provide the names of these witnesses, nor did he provide a summary of their anticipated testimony in his Rule 37.1 petition, the trial court referred to a transcript of a pretrial hearing conducted on the day of trial and considered complaints raised on the record by Stover that counsel had failed to subpoena Kaneida Rambo, Renee Cook, and Gary Madrid. In assessing the attorney's decision to not call a particular witness, it must be taken into account that the decision is largely a matter of professional judgment that experienced advocates could endlessly debate. *Sparks v. State,* 2009 Ark. 260, at 2–3, 2009 WL 1317245 (per curiam). Based on its review of the record, the trial court concluded that Stover's counsel "exhibited reasonable professional judgment in their stated reasons for not calling these witnesses." This conclusion is not clearly erroneous. With respect to Stover's allegations that counsel ineffectively failed to call Candice Williams and Sheryl Crown for the purpose of presenting character evidence, we are precluded from addressing this argument which was not raised below or considered by the trial court. *Thornton,* 2014 Ark. 113, at 2, 2014 WL 1096263.

*Stover v. State*, 2016 Ark. 167, 9–10.

In light of the state court's ruling, Stover may only obtain habeas corpus relief if he can show the state court's decision "was contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court" or the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court." 28 U.S.C. § 2254(d)(1), (2). Stover apparently contends the decision was an unreasonable determination of the facts in light of the evidence presented in state court, as he asserts it is reasonably probable that the outcome of the trial could have been different if his attorneys called these witnesses to testify.

Generally, Stover alleges the witnesses would have assisted in two ways: (1) offering character testimony; and (2) corroborating Stover's version of events, which was that he was framed or that there was an innocent explanation for why he was found in possession of the drugs and firearm on May 1, 2012. For several reasons, we find Stover fails to establish constitutional error on the part of his attorneys in deciding not to call these witnesses.

First, Stover testified on his own behalf at trial. He sought to establish his character by discussing his devotion to his 15 year old son and his generosity to Kenitto Rambo ("Rambo"), the woman who, along with her two children, he took in to his motel room. He testified to giving Rambo money for a meal. According to his testimony, he conscientiously "snatched" the firearm from Rambo's five year old son, and he took possession of the cigarette packet so that Rambo's kids "wouldn't get ahold of it." Docket entry no. 12-2, pages 250, 253. He also told the jury that he suspected Rambo framed him by calling the police.[7] Given his trial testimony, any other character testimony or statements about how he came into possession of the drugs and firearm would have been cumulative to Stover's own testimony.

Second, Stover voiced his disagreement about witnesses at the pretrial hearing. We have already described this exchange in our discussion of claim 2(c). It is significant that Stover wished to call Rambo to corroborate his version that he took possession of the gun and the drugs as a

---

[7]Stover stated the "only thing I can think of is she needed a place to stay and probably that she had something to do with calling the police to get my room . . ." Also, "the more I sit and thought about it, I – I – I figured that she had a lot to do with it." Docket entry no. 12-2, page 254.

byproduct of protecting her children.  McElveen informed the trial court that Rambo would testify that Stover actually stole the gun from her.  This highlights the possibility that the witnesses identified by Stover may not have testified as he thought or desired.  Had Rambo testified that Stover stole the gun from her, his credibility would be immediately called into question, and McElveen's assessment that such testimony would be harmful was accurate.

Third, Stover's list of proposed witnesses could offer only second hand or hearsay testimony on the pivotal issue of how he came into possession of the drugs and firearm, as he testified that he was alone when he placed the cigarette packet in his pocket, and only he, Rambo, and her small children were in the motel room when he initially allegedly took possession of the gun.

Stover's challenge to the state courts' consideration of this allegation of ineffective assistance of counsel is without merit.

***Two(f):  Stover received constitutionally ineffective assistance of counsel when his attorneys failed to object to the prosecution's amendment of the information and prosecutorial vindictiveness in amending the information.***

The pertinent dates are as follows:

| | |
|---|---|
| May 1, 2012 | Stover arrested |
| July 11, 2012 | Criminal Information filed charging Stover with three class D felonies – possession of a controlled substance, possession of drug paraphernalia, and possession of a firearm by certain persons (docket entry no. 12-1, pages 11-13) |
| January 29, 2013 | Case is set for trial (docket entry no. 12-1, page 151) |
| March 8, 2013 | An Amended Criminal Information is filed adding the charge of simultaneous possession of drugs and firearms, a class Y felony, to the other charges (docket entry no. 12-1, pages 8-10) |
| April 9, 2013 | Jury trial commences (docket entry no. 12-2) |

Stover raised at least a portion of this claim in his Rule 37 petition, where the trial court

denied relief and the Supreme Court of Arkansas affirmed, writing:

> . . . Stover contends that counsel failed to object to the State's amendment of the criminal charges to include one count of simultaneous possession of a weapon and a controlled substance. Stover asserts that he was prejudiced because he was not made aware of the amendment until the day before his trial. The State, however, is entitled to amend an information at any time before the case is submitted to the jury as long as the amendment does not change the nature or the degree of the offense charged or create an unfair surprise. *Dodge v. State,* 2014 Ark. 116, at 6, 2014 WL 1096135 (per curiam). An amendment may be properly quashed if it misleads or impedes a criminal defendant in making a defense. *Hoover v. State,* 353 Ark. 424, 428, 108 S.W.3d 618, 620 (2003). The mere fact that an amendment authorizes a more severe penalty does not change the nature or degree of the crime. *Stewart v. State,* 338 Ark. 608, 612, 999 S.W.2d 684, 687 (1999). The record shows that the prosecutor originally charged Stover with possession of a controlled substance and possession of a weapon. Stover does not explain how the amended charge of simultaneous possession of drugs and weapons changed the nature of the charges such that it impeded the development of his defense or prejudiced the outcome of his trial. *Hoover,* 353 Ark. at 428, 108 S.W.3d at 620.
>
> Stover's contention that he was unfairly surprised by the amended information is not only conclusory but it is also contradicted by the record. The prosecutor amended the information to add the additional charge on March 8, 2013, thirty-two days before Stover's trial on April 9, 2013. *See DeAsis v. State,* 360 Ark. 286, 294–95, 200 S.W.3d 911, 916, (2005) (concluding that defendant was not prejudiced by an amendment that added additional charges thirty-four days before trial). Moreover, the record shows that when Stover was originally arrested, he was charged with simultaneous possession of drugs and a weapon as reflected in documents prepared and filed by Benton County police officers. The trial court did not clearly err when it concluded that this allegation of attorney error was without merit because the amended information added one charge for which Stover had been originally arrested and the amendment occurred 30 days before trial.

*Stover v. State*, 2016 Ark. 167, 6–7.

Stover contends his attorneys should have raised a due process objection to the amending of the information. Specifically, he alleges he did not receive fair notice of the charges levied against him, and the prosecutor acted vindictively in amending the information. In order to establish either of these claims, Stover must overcome the deference, pursuant to 28 U.S.C. § 2254(d)(1), (2),to be given to the state courts' decision. He does not do this, failing to show the state courts decision was contrary to or an unreasonable application of federal law, and failing to show the decision was an unreasonable application based upon the facts adduced in the trial court. The timing of the events, as set forth above, shows Stover had more than a month after the information was

amended to prepare for trial. Also, the nature of the amendment, as noted by the Supreme Court of Arkansas, was significant. Stover, based upon the original information, was to be tried for possession of methamphetamine and possession of a firearm. Preparation for trial on those charges overlapped almost entirely with defending the amended charge of simultaneous possession of drugs and firearms. The Supreme Court of Arkansas rightly found Stover did not explain how the amended charge impeded his defense or affected the trial's outcome.

Stover offers numerous arguments, some of which are raised for the first time with this Court, to support his claim that his attorneys were ineffective for failing to raise a due process objection to the amended information. We have reviewed these arguments, mindful that Stover must show, under *Strickland*, that he was prejudiced by his attorneys' alleged error. In addition to finding no prejudice, our review of the transcript reflects that his attorneys acted reasonably in proceeding to trial without objecting to the amended information. It is not reasonable to believe that the result rendered would have been different if his trial attorneys filed a motion to dismiss the amended information on due process grounds.

Similarly, Stover does not carry his burden to show prosecutorial vindictiveness as the source of the amended information. It is not sufficient to offer conclusions which are unsupported by the record.

There is no merit to claim 2(f).

***Two(g): Stover received constitutionally ineffective assistance of counsel when his attorneys failed to properly object, move for a mistrial, and preserve the objection when Stover was seen by the jury wearing a jail identification bracelet.***

The Supreme Court of Arkansas, in affirming the trial court's Rule 37 decision, considered this claim:

> . . . Stover argues that counsel were ineffective for failing to obtain a ruling on a motion for mistrial that was made after it was discovered that Stover had been wearing a prison-identification bracelet on his left arm while in the presence of the jury panel. On direct appeal, the court of appeals refused to reach this issue because counsel did not obtain a ruling on the mistrial motion from the trial court. *Stover,*

2014 Ark. App. 393, at 3–4, 437 S.W.3d at 698. The record demonstrates that Stover's counsel moved for a mistrial because of the prison-identification bracelet, and also because potential jurors had seen Stover being escorted by a deputy sheriff. Without ruling on the motion, the trial court ordered that the bracelet be removed and excused two potential jurors who had seen Stover with the sheriff's deputy.

The record shows that Stover was wearing the bracelet for a short time before it was discovered and removed and that it was inconspicuous such that neither Stover's counsel nor the trial court noticed it until the prosecutor brought it to light. Stover insists that counsel was ineffective in failing to preserve the bracelet issue for appeal and contends that, due to counsel's errors, he was "forced to stand trial in prison garb." Briefly appearing before potential jurors wearing a prison-identification bracelet does not constitute being forced to stand trial in prison garb. *See Vance v. State,* 2011 Ark. 243, at 33, 383 S.W.3d 325, 346 (a mistrial was not warranted when the sighting of the defendant in shackles and prison garb outside the courtroom was brief and inadvertent, by less than all of the jurors). Additionally, Stover does not establish that any member of the jury panel noticed the bracelet or its significance in the short time that Stover was wearing it in their presence. Even if a few jurors spotted the bracelet, the sighting was brief and inadvertent. *Vance,* 2011 Ark. 243, at 33, 383 S.W.3d at 346. Stover does not demonstrate that counsel failed to preserve a meritorious issue on appeal. *State v. Rainer,* 2014 Ark. 306, at 13, 440 S.W.3d 315, 323. (per curiam).

*Stover v. State*, 2016 Ark. 167, 8–9.

As with the other claims of Stover asserting his attorneys were ineffective, the clearly established federal law is *Strickland v. Washington*, and Stover must show his attorneys acted unreasonably and that he was prejudiced from their acts or omissions.

A week before the trial the presiding judge granted Stover's motion for leave to appear in civilian dress for all future court appearances.  Docket entry no. 12-1, page 68.  On the day of trial, Stover indeed wore civilian clothes.  However, he also wore a jail identification bracelet for a brief time prior to the voir dire of the jury.  When the prosecutor noticed the bracelet, the trial judge had it removed and excused two potential jurors who had previously seen Stover.

Stover's attorneys moved for a mistrial but a ruling was never given, following the corrective measures taken by the trial judge.  Stover urges that his attorneys should have received a ruling on the motion, and that he was prejudiced due to their failure to press for and receive the ruling.  Stover cites *Croston v. State*, 95 Ark. App. 157 (2006) for the proposition that prejudice occurs "from the moment the potential jurors witness the defendant in identifiable prison garb."  Docket entry no. 19-

1, page 34.  The *Croston* case is inapplicable, however, because Croston was actually wearing prison garb, having refused to wear the civilian clothes provided by the state, and was observed by all the jurors.  Wearing civilian clothes and a jail identification bracelet is not the same as wearing prison garb.  Stover's situation was more akin to the facts in *Vance v. State*, 2011 Ark. 243, where the defendant wore civilian clothes during trial but was seen by two jurors in shackles and prison garb after the third day of trial.  The Supreme Court of Arkansas found this "brief and inadvertent sighting" was not equivalent to being forced to trial in prison garb.  2011 Ark. at 33.  The *Vance* Court held that a mistrial was not warranted under the circumstances.

Initially, we find that Stover was not forced to trial in prison garb, and cases where this occurred, such as *Croston*, do not apply.  Further, even assuming his attorneys should have demanded and received a ruling on the motion for mistrial, the *Vance* decision, cited by the Supreme Court of Arkansas in Stover's Rule 37 appeal, dictates that such a motion would not have been granted.  Comparing the facts, Stover was possibly seen by two potential jurors, who were both excused, while wearing an inconspicuous jail identification bracelet, which was promptly removed, while Vance was clearly observed outside the courtroom by two jurors in shackles and prison garb.  Utilizing the *Strickland* test, Stover's attorneys were not ineffective in this regard because the motion for mistrial was without merit.

### Summary

We have considered the merits of all of Stover's claims, choosing not to reject any claims due to the failure to pursue them in state court.  His numerous claims of ineffective assistance of counsel are without merit as he can show no prejudice stemming from the alleged acts and/or omissions of his attorneys.  His claim of actual innocence is without merit, based upon the explicit Arkansas statutory language on how to calculate the weight of the controlled substance, and upon Arkansas case law on the issue of a usable amount of methamphetamine.  Accordingly, we recommend the petition for writ of habeas corpus be dismissed, and the relief requested be denied.

Pursuant to 28 U.S.C. § 2253 and Rule 11 of the Rules Governing Section 2554 Cases in the United States District Court, the Court must determine whether to issue a certificate of appealability in the final order. In § 2254 cases, a certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(1)-(2). The Court finds no issue on which petitioner has made a substantial showing of a denial of a constitutional right. Thus, we recommend the certificate of appealability be denied.

IT IS SO ORDERED this 11th day of May, 2018.

_____
UNITED STATES MAGISTRATE JUDGE